Filed 6/18/24  P. v. Pena CA4/1
# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| THE PEOPLE,<br><br>    Plaintiff and Respondent,<br><br>    v.<br><br>CHRISTOPHER JOHN PENA, SR.,<br><br>    Defendant and Appellant. | D083317<br><br><br><br>(Super. Ct. No. RIF2101762) |

APPEAL from a judgment of the Superior Court of Riverside, Steven G. Counelis, Judge.  Affirmed.

Marta I. Stanton, under appointment by the Court of Appeal, for Defendant and Appellant.

No appearance for Plaintiff and Respondent.

A jury convicted Christopher John Pena, Sr. of kidnapping (Pen. Code,[1] § 207, subd. (a); count 1), making a criminal threat (§ 422; count 4), and assault (§ 240; count 5).  Pena admitted to four aggravating factors, and the court sentenced him to the upper term of eight years on count 1.  The court

---

[1]    Statutory references are to the Penal Code unless otherwise specified.

imposed concurrent sentences of two years on count 4 and 180 days on the misdemeanor count 5 conviction. Pena filed a timely notice of appeal.

Pena's counsel has filed a brief seeking our independent review of the record pursuant to *People v. Wende* (1979) 25 Cal.3d 436 (*Wende*) and *Anders v. California* (1967) 386 U.S. 738 (*Anders*) to determine whether there are any arguable issues for review. We sent Pena notice that his attorney had filed a *Wende* brief and provided him with the opportunity to file a supplemental brief. He has not responded. After our independent review of the record, we affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

A. *Prosecution's Case*

Pena had been dating Lindsey H. on and off for seven years. On April 30, 2021, they decided to drive from Anaheim to Pechanga Casino. Lindsey drove her white Kia and Pena soon fell asleep in the passenger seat. Lindsey had taken medication that morning to treat a past opioid addiction and had some Jack Daniels and Coke, which she brought with her in the car. Pena had consumed a few beers.

After driving for a couple of hours, Lindsey pulled off the highway into a shopping center. She gave Pena $20 and asked him to buy some tacos at a Mexican restaurant. They got into a small argument when he came out, and Lindsey said, "Well, you don't have to be here if you don't want to be." At that point, Pena got out of the car, and Lindsey pulled away.

When she reached a nearby stop sign, Pena jumped in front of her car and said, "Stop. . . . My phone is in your car." Lindsey didn't see the phone and he started to yell, so she asked him to move. When he did not move, she told him she was going and let her foot off the brake. Her car rolled forward, and Pena jumped to the side, screaming that her car had run over his foot.

2

Lindsey was scared and sped off to the back of a nearby grocery store. After catching her breath, she pulled back out to the far end of the parking lot where she did not think Pena would see her, got out, and went around to the passenger side to look underneath the seat for his phone.

She glanced up just in time to see Pena run to her open driver's side door and jump into the car. He then grabbed her hair and pulled her into the car, at which point he pushed her head down to the center console and held it there with his elbow. He also punched her in the eye. She described him as "enraged" and said he drove off before she could put on her seat belt or close the door.

Three witnesses who called 911 described seeing Pena peel out, almost hitting at least one other vehicle. They saw a woman hanging partially out of the open passenger side door and heard her screaming for help and shouting that the driver was going to kill her.

Lindsey testified that as they drove Pena said things like "[y]ou're going to die today" and made clear he was looking for a spot to kill her. He also pulled out a knife with a flip-out blade and, although he did not try to touch her with it, verbally threatened her while holding the knife.

After swerving around a road at high rates of speed, Pena pulled off into an empty dirt lot. When he slowed to turn around, Lindsey jumped out of the car, although Pena grabbed and tore her shirt trying to stop her. Pena backed into a dirt wall and then drove after her in the parking lot, doing "doughnuts" around her. He then got out of the car, knocked her down, choked her, and pushed her down a steep embankment. Lindsey said she slid down at least 100 feet on her back.

She stayed at the bottom of the hill until she heard the car drive away and then climbed back up the slope. Pena returned and ran toward her just

3

as police officers arrived. With weapons drawn, the officers instructed Pena to lie face down. Pena yelled, "[s]he tried to run me over." Before officers took him away, Pena said to Lindsey, "Bitch, you're going to get what's coming to you. I'm coming for you. I'm going to kill you." An officer also testified that Pena said, "Hey Lindsey. Watch yourself." A knife was later found on the driver's seat of the car.

At the sheriff's station, Pena yelled and kicked the wall of his holding cell on and off for about two hours. When an officer asked him to stop kicking the walls, Pena replied, "[y]ou're lucky I didn't kill her." In subsequent calls from jail, Pena asked Lindsey to forgive him, drop the charges, and call his defense attorney.

B. *Defense Case*

Pena's sister provided video footage from her home security camera showing Pena and Lindsey at her house prior to leaving for the casino. These videos refuted Lindsey's testimony regarding what she was doing earlier that day.

Pena then testified in his own defense. He claimed Lindsey ran over his foot and ankle in front of the Mexican restaurant and caused damage to his knee. He explained that the car swerved as they drove away because Lindsey was pulling his hair, tugging at the steering wheel, and yelling at him. He denied hurting or threatening to kill her and said she tripped and fell off the embankment. He denied owning the knife.

The District Attorney of the County of Riverside charged Pena with kidnapping (§ 207, subd. (a); count 1), attempted murder (§§ 664/187, subd. (a); count 2), willfully inflicting corporal injury upon someone with whom the offender has a dating relationship (§ 273.5, subd. (a); count 3), making a criminal threat (§ 422; count 4), and assault with a deadly weapon

4

(a pocketknife) (§ 245, subd. (a)(1); count 5). It was further alleged that Pena suffered two prior convictions of a serious and violent felony pursuant to sections 667, subdivisions (c) and (e)(2)(A) and 1170.12, subdivision (c)(2)(a) and that four aggravating factors applied.

The jury could not agree on a unanimous verdict as to counts 2 and 3, and the court declared a mistrial as to those counts.[2] The jury found Pena guilty of counts 1 and 4 and the lesser included offense to count 5 of misdemeanor assault (§ 240).

Pena admitted the two prior strikes and four aggravating factors. However, the court granted his motion pursuant to *People v. Superior Court (Romero)* (1996) 13 Cal.4th 497 and struck the two prior strike convictions.

## DISCUSSION

As we have noted, appellate counsel has filed a *Wende* brief asking us to independently review the record for error. To assist this court in its review of the record, and in compliance with *Anders*, counsel identified a possible issue that counsel considered in evaluating the potential merits of this appeal: specifically, whether the trial court erred in restricting defense counsel from cross-examining Lindsey with impeachment evidence regarding a prior domestic violence arrest.

We have reviewed the record for error as required by *Wende* and *Anders*. We have not discovered any arguable issues for reversal on appeal. Competent counsel has represented Pena on this appeal.

---

[2] Upon the People's motion, the court subsequently dismissed counts 2 and 3.

## DISPOSITION

The judgment is affirmed.


HUFFMAN, Acting P. J.

WE CONCUR:


DATO, J.


BUCHANAN, J.